## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-23821 SBB |
| CERAGENIX PHARMACEUTICALS, INC. | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | |
| | ) | Chapter 11 |
| CERAGENIX CORPORATION | ) | Case No. 10-23822 SBB |
| | ) | |
| Debtor. | ) | Jointly Administered Under |
| | ) | Case No. 10-23821 SBB (Proposed) |
| | ) | |
| | ) | |

### FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION SECURED FINANICING; (II) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, AND 363; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

Upon the motion of the Debtors and Debtors in possession (the "**Debtors**" or

"**Borrowers**") in the above-captioned jointly administered chapter 11 cases (the "**Chapter 11**

**Cases**"), dated May 19, 2010 (the "**Motion**"), seeking the entry of an interim order (the "**Interim**

**Order**") and a final order (the "**Final Order**") pursuant to sections 105, 361, 362, 363(c),

364(c)(1), 364 (c)(2), 364(c)(3) and 364 (e) of title 11 of the United States Code, 11 U.S.C.

§§ 101, et seq. (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the

Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**") (i) authorizing

the Debtors to obtain up to $375,000.00on an interim basis and $750,000.00 on a final basis in

aggregate principal amount of postpetition financing (the "**DIP Facility**") and the loans under

such facility (the "**DIP Loans**") on the terms set forth in this Order and the **CERAGENIX**

**DEBTOR-IN-POSSESSION FINANCING SUMMARY OF PRINCIPAL TERMS AND CONDITIONS** attached to the Motion as **Exhibit 1** (as hereafter amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof (the "**Term Sheet**")), together with the Interim Order and this Final Order and any other definitive loan documents required by Lenders identified in the Term Sheet (the "**DIP Lenders**") and entered into by the parties thereto (collectively, the "**DIP Facility Documents**") (ii) authorizing the Debtors' limited use of cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code (as so defined, "**Cash Collateral**"), solely on the terms and conditions set forth in this Order and the Operating Budget(as defined below); and (iii) granting adequate protection to the Prepetition Lenders (as hereinafter defined); and the Interim Hearing having been held by this Court on July 27, 2010, and the Final Hearing having been held by this Court on August 10, 2010; and the Court having considered the Motion and all pleadings related thereto, including the record made by the Debtors at the Interim Hearing and the Final Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A.      On June 2, 2010 (the "**Petition Date**"), the Debtors filed with this Court their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors' committee has been appointed in the Chapter 11 Cases.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2

C.       The Debtors have provided notice of the Motion and the Final Hearing in accordance with Bankruptcy Rule 2002 and Local Rule 9013 to: (i) the Office of the United States Trustee for this District (the "**U.S. Trustee**"); (ii) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition Lenders (as hereinafter defined); (iv) each of the Prepetition Lenders; (v) all other parties with liens of record on assets of the Debtors as of the Petition Date; (vi) all financial institutions at which the Debtors maintains deposit accounts; (vii) the landlords for all non-residential real properties occupied by the Debtors as of the Petition Date; (viii) all other parties requesting notice pursuant to Bankruptcy Rule 2002 and 4001(b), (c) and (d); and (ix) all parties appearing on the Debtors' matrix.  Given the nature of the relief sought in the Motion, the Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rule 4001 in all respects.

D.       Subject to the rights of parties in interest as set forth in paragraph 32 below, the Debtors hereby admit, stipulate and agree that, in connection with their business operations, Ceragenix Pharmaceuticals, Inc. ("**CPI**") is obligated on outstanding Convertible Promissory Notes dated as of November 28, 2005 (the "**Notes**"), and 9% Secured Convertible Debentures dated as of December 5, 2006 (the "**Debentures**"), issued to Midsummer Investment, Ltd., Longview Equity Fund LP, Longview Fund LP, Bushido Capital Master Fund L.P., BCMF Trustees, LLC, Pierce Diversified Strategy Master Fund, ACM, SPV, LLC, Alpha Capital Aktiengesellschaft, CFRR Holdings, LLC, and Ralph Rabman (collectively, the "**Prepetition Lenders**").  The aggregate principal.  Ceragenix Corporation ("**CC**") has guaranteed all obligations of CPI under the Notes and Debentures by Guaranty dated as of November 28, 2005 (the "**Guaranty**").  The obligations of CPI under the Notes and Debentures, and the obligations

3

of CC under the Guaranty, are secured by all assets of each, pursuant to a Security Agreement dated as of November 28, 2005, and UCC filings with the Delaware Secretary of State, Reception No. 5368350-6, filed on November 30, 2005, as amended on December 12, 2006 at Reception No. 6433014-8, as to CPI, and with the Colorado Secretary of State, Reception No. 20052122321, on December 2, 2005, as to CC.   The Notes, Debentures, Guaranty, and other documents setting forth the obligations of the Debtors to the Prepetition Lenders are referred to herein jointly as the "**Loan Documents**."  The obligations of the Debtors arising under the Loan Documents are referred to herein as the "**Prepetition Obligations**."  Pursuant to an Amended and Restated Collateral Agent Agreement dated as of December 5, 2006, Barbara R. Mittman serves as the Collateral Agent for the Prepetition Lenders (the "**Collateral Agent**")

E.      Subject to the rights of parties in interest as set forth in paragraph 32 below, the Debtors hereby further admit, stipulate and agree that:

i.  The Prepetition Obligations are secured by security interests in, and liens on, essentially all of the assets (tangible, intangible, real, personal or mixed) of the Debtors, including, without limitation, accounts, documents, inventory, equipment, capital stock in subsidiaries, investment property, instruments, chattel paper, commercial tort claims, contracts, goods, instruments, cash, cash equivalents, securities accounts, deposit accounts, commodity accounts, real estate, leasehold interests, patents, copyrights, trademarks, causes of action, and other general intangibles, and all products and proceeds thereof (the "**Prepetition Collateral**").

ii.  All Loan Documents executed and delivered by the Debtors to the Prepetition Lenders are valid and enforceable by the Prepetition Lenders against the Debtors. The Prepetition Lenders duly perfected their liens upon and security interests in the Prepetition Collateral by, among other things, filing financing statements, mortgages and fixture filings and,

4

where necessary, by possession of relevant instruments, certificates, or other property.  All of such financing statements, mortgages and fixture filings were validly authorized by the Debtors or validly executed by authorized representatives of the Debtors.  Pursuant to the Loan Documents, the Prepetition Lenders have a perfected first priority security interests in and liens on all of the Prepetition Collateral, including the Cash Collateral.

      iii.   The liens and security interests of the Prepetition Lenders in the Prepetition Collateral, as security for the Prepetition Obligations (the "**Prepetition Lenders' Liens**"), constitute valid, binding, enforceable and perfected first priority liens and security interests.  The liens and security interests of the Prepetition Lenders in the Prepetition Collateral are not subject to avoidance, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated to the Carve-Out (as hereinafter defined) in accordance with the provisions of this Order).

      iv.   The Debtors further admit, acknowledge and agree that (i) the Prepetition Obligations constitute legal, valid and binding obligations of the Debtors, (ii) no offsets, defenses or counterclaims to the Loans exist, and (iii) no portion of the Prepetition Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The Debtors irrevocably waive any right to challenge or contest such liens of the Collateral Agent for the benefit of herself and the Prepetition Lenders in the Prepetition Collateral or the validity of the Prepetition Obligations.

      v.   The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against any Prepetition Lender in any way relating to the Loan Documents, the Prepetition Obligations or any related transactions, whether arising at law or at equity, including, without limitation, any re-characterization, subordination,

avoidance, lender liability or other Debtors claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code or otherwise.

                vi.  As of the Petition Date, pursuant to the Loan Documents, without defense, counterclaim or offset of any kind, the aggregate principal amount of loans made by the Prepetition Lenders pursuant to and in accordance with the terms of the Loan Documents was not less than the aggregate amount of **$ 10,552,002.00**, plus (a) all accrued and hereafter accruing and unpaid interest thereon and (b) additional fees and expenses (including any professional fees and expenses that are chargeable or reimbursable under the Loan Documents) now or hereafter due under the Loan Documents.

      F.      The Debtors require the financing described in the Motion to, among other things, (i) fund the working capital and general corporate needs of the Debtors and the costs of the Chapter 11 Cases in accordance with the Operating Budget (as defined below), including the making of license payments to preserve the value of the Debtors' licenses to the extent permitted by the Operating Budget; and (ii) provide adequate protection to the Prepetition Lenders.  If the Debtors do not obtain authorization to borrow under the DIP Facility Documents and the DIP Facility is not approved, the Debtors will suffer immediate and irreparable harm.  The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under Bankruptcy Code section 503, or other financing under Bankruptcy Code sections 364(c) or (d), on equal or more favorable terms than those set forth in the DIP Facility Documents based on the totality of the circumstances.  Moreover, a loan facility in the amount provided by the DIP Facility Documents is not available to the Debtors without granting the DIP Lenders, superpriority claims, junior liens, and security interests, pursuant to Bankruptcy Code sections 364(c)(1), (2), (3) and 364(d), as provided in this Order and the DIP Facility Documents.  After

considering all alternatives, the Debtors have concluded, in the exercise of their prudent business judgment, that the credit facility provided under the DIP Facility Documents represents the best financing package available to it and is in the best interests of the estates and their creditors. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and adequately protect any non-consenting parties' interests in the Prepetition Collateral.

G.      The Debtors also have an immediate need to use Cash Collateral to, among other things, fund the ordinary costs of their operations, maintain business relationships with vendors, suppliers and customers, make payroll, make capital expenditures, pay license fees, and satisfy other working capital and operational needs. The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral under the terms of this Order is vital to the preservation and maintenance of the going concern value of the Debtors' estates so that the Debtors can maximize the value of their estates. Consequently, without the continued use of Cash Collateral, to the extent authorized pursuant to this Order, the Debtors and their estates would suffer immediate and irreparable harm.

H.      The Prepetition Lenders are prepared to consent to the Debtors' use of the Cash Collateral, provided that the Court authorizes the Debtors, pursuant to sections 361 and 363 of the Bankruptcy Code:

i.  to grant to the Prepetition Lenders, as adequate protection for the Adequate Protection Obligations (as hereinafter defined), but subject to the Carve-Out, (a) replacement first priority security interests in and liens and mortgages (collectively, the "**Adequate Protection Liens**") on all of the assets (tangible, intangible, real, personal or mixed) of the Debtors, whether now owned or hereafter acquired, including, without limitation,

7

accounts, documents, inventory, equipment, capital stock in subsidiaries, investment property, instruments, chattel paper, commercial tort claims, cash, cash equivalents, securities accounts, deposit accounts, commodity accounts, real estate, leasehold interests, contracts, patents, copyrights, trademarks, causes of action, including avoidance actions (subject to entry of the Final Order), and other general intangibles, and all products and proceeds thereof (collectively, the "**Post-Petition Collateral**") subject only to the senior liens to be granted to the DIP Lenders pursuant to the DIP Facility and this Order, and (b) a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code (the "**Adequate Protection Priority Claim**"), which Adequate Protection Priority Claim shall be senior in priority to any and all claims under sections 503(b) and 507(b) of the Bankruptcy Code, except the priority claims granted to the DIP Lenders pursuant to the DIP Facility and this Order; and

ii.   the Adequate Protection Liens and Adequate Protection Priority Claims shall secure the payment of the Prepetition Obligations in an amount equal to any and all diminution in the value of the Prepetition Lenders' interests in the Prepetition Collateral from and after the Petition Date (the "**Adequate Protection Obligations**") including, without limitation, any such diminution resulting from any of the following: (i) the use by the Debtors of the Prepetition Collateral, including, without limitation, the Cash Collateral, and (ii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code.   The Adequate Protection Liens shall be subject to the Carve-Out and senior to any other liens on the Post-Petition Collateral except the liens securing the DIP Facility.

I.      The consent of the Prepetition Lenders to the use of Cash Collateral as set forth herein shall not extend to any other use of Cash Collateral.   Furthermore, the consent of the Prepetition Lenders to the use of Cash Collateral as set forth herein shall not constitute, and shall

not be construed as constituting, an acknowledgment or stipulation by the Prepetition Lenders that their interests in the Prepetition Collateral are adequately protected pursuant to this Order or otherwise.

J.     Good cause has been shown for immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2). In particular, the authorization granted herein for the Debtors to obtain postpetition financing pursuant to the DIP Facility Documents and to use Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors and their estates. Entry of this Order is in the best interests of the Debtors, their estates and creditors. The terms of the DIP Facility Documents and the Debtors' continued use of Cash Collateral are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

K.     The Debtors and the Prepetition Lenders have negotiated the terms and conditions of the Debtors' continued use of Cash Collateral and this Order in good faith and at arm's-length. The DIP Facility and/or other financial accommodations made to the Debtors by the DIP Lenders pursuant to this Final Order and/or the DIP Facility Documents shall be deemed to have been extended by the DIP Lenders in good faith, as that term is used in Bankruptcy Code section 364(e), and the DIP Lenders shall be entitled to all protections afforded thereunder, including, without limitation, the full protection of Bankruptcy Code section 364(e) in the event that this Order or any provision thereof is vacated, reversed or modified, on appeal or otherwise.

L.     Based on the foregoing, and upon the record made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted, subject to the terms and conditions set forth herein. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits.  This Final Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014.  The terms and provisions of the DIP Facility Documents are approved on a final basis.

2.      The Debtors are hereby authorized to obtain the DIP Loans, pursuant to the terms of this Final Order and subject to the terms of the DIP Facility Documents, in the aggregate principal amount of up to $750,000.00.  Available financing and advances under the Term Sheet shall be made to fund, in accordance with the DIP Facility Documents, (i) the working capital and general corporate needs of the Debtors and the costs of the Chapter 11 Cases in accordance with the Operating Budget (and the variances permitted thereto), including licensing fees to the extent permitted by the Operating Budget, and (ii) provide adequate protection for the benefit of the Prepetition Lenders.  The DIP Lenders shall have no obligation to make any loan or advance under the DIP Facility Documents unless the conditions precedent to make such advances under the Term Sheet and the DIP Facility Documents have been satisfied in full or waived in accordance with the provisions thereof.

3.      The Debtors are hereby authorized to use the Cash Collateral solely in accordance with the Operating Budget (as defined in the Term Sheet) and the terms and conditions set forth in this Order.  Subject to the terms and conditions set forth in this Order, the Debtors may use the Cash Collateral to: (i) make the adequate protection payments required under this Order, (ii) fund general corporate and working capital requirements of the Debtors

10

(including, without limitation, the Debtors' ongoing administrative expenses in the Chapter 11 Case, and (iii) pursue a sale of all or substantially all of their assets, in each case in accordance with the Operating Budget and the terms of this Order.

4.     Attached hereto as Exhibit A is an Operating Budget (the "**Approved Budget**") for the period from July 14, 2010 through October 31, 2010 (the "**Approved Budget Period**") which reflects the Debtors' anticipated cumulative cash receipts and expenditures on a monthly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each month of the Approved Budget starting as of July 14, 2010.  On a monthly basis, beginning with the partial month from July 14, 2010 through July 31, 2010, the aggregate actual disbursements specified in the Approved Budget during each such month must be no greater than 105% of the aggregate projected disbursements for such period.  If necessary, but not later than two weeks prior to the expiration of the initial Approved Budget Period, the Borrowers shall provide to the DIP Lenders an updated Operating Budget for any additional period required to effectuate the sale of all or substantially all of the Debtors' assets, in substantially the same format as the previous budget, which upon acceptance by the DIP Lenders, shall become the Approved Budget; provided, however, that a new Operating Budget may be effectuated at any time with the consent of the DIP Lenders.  In the event the Borrowers and the DIP Lenders fail to agree upon a new Operating Budget by the end of the then-current Approved Budget, the DIP Facility will terminate upon the expiration of the last Approved Budget.

5.     The Debtors shall provide to the DIP Lenders and the Prepetition Lenders so as actually to be received on or before the first Friday by 12:00 noon (Eastern time) of each calendar month, a monthly line-by-line variance report for the preceding month and on a

11

cumulative basis for the period from July 14, 2010 to the last day of such preceding monthly period, which variance reports shall be in form and substance reasonably acceptable to the DIP Lenders and the Prepetition Lenders comparing actual cash disbursements to amounts projected in the Approved Budget. Failure by the Debtors to comply with the Operating Budget shall constitute a Termination Event (as defined below). The Operating Budget shall not be modified or otherwise amended without the written consent of the Prepetition Lenders and the DIP Lenders.

6.     The Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtors or the Prepetition Lenders, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents.

7.     As adequate protection for the payment of the Adequate Protection Obligations and subject to the Carve-Out, the Prepetition Lenders shall be granted the Adequate Protection Liens and the Adequate Protection Priority Claim (each as defined in Paragraph H).

8.     As additional adequate protection, (i) the Prepetition Lenders shall be entitled to the current cash payment of all of their hereafter incurred costs and expenses, including professionals' fees and expenses, in accordance with the terms of the respective Loan Documents, including, but not limited to, the fees and expenses of legal counsel and other professionals retained by the Prepetition Lenders; and (ii) the Debtors shall be prohibited from incurring additional indebtedness with claim status with priority over the Prepetition Obligations or liens equal to or senior in priority to the liens securing the Prepetition Obligations, other than

the DIP Obligations, as defined below.  All cash payments of costs and expenses, including professionals' fees and expenses, payable to the Prepetition Lenders pursuant to this Order shall be provisional in nature, subject to final allowance in accordance with section 506(b) of the Bankruptcy Code, with any such payments not so allowed to be recharacterized as payments of principal under the Prepetition Loan Documents.  Nothing herein shall preclude the Prepetition Lenders from seeking additional adequate protection of their interests in the Prepetition Collateral.  Furthermore, nothing herein shall be construed as an acknowledgment or stipulation by the Prepetition Lenders that their interests in the Prepetition Collateral are adequately protected pursuant to this Order or otherwise.

9.      The Debtors are authorized to negotiate, prepare, enter into, and deliver the DIP Facility Documents, in each case including any amendments thereto.  The Debtors are further authorized and directed to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, and mortgages or deeds of trust encumbering all of the Postpetition Collateral and securing all of the Debtors' obligations under the DIP Facility Documents.

10.     The Debtors are hereby further authorized to (i) perform all of their obligations under the DIP Facility Documents, and such other agreements as may be required by the DIP Facility Documents to give effect to the terms of the financing provided for therein and in this Order, and (ii) perform all acts required under the DIP Facility Documents and this Order, including payment of fees described in the DIP Facility Documents.

11.     All obligations under the DIP Facility Documents shall constitute valid and binding obligations of the Debtors, enforceable against them and their successors and assigns (including, without limitation, any successor trustee or other estate representative in the Chapter

13

11 Cases or subsequent or superseding chapter 7 or Chapter 11 Cases (each, a "**Successor Case**")), in accordance with the terms of the DIP Facility Documents and the terms of this Order, and no obligation, payment, transfer or grant of security under the DIP Facility Documents or this Order shall be voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Bankruptcy Code section 502(d)) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

12.     All fees, costs and/or expenses payable or reimbursable by the Debtors as set forth in the DIP Facility Documents are hereby approved.  The Debtors are hereby authorized to pay all such fees, costs, and expenses in accordance with the terms of the DIP Facility Documents and this Order, without the DIP Lenders or their respective counsel having to file any further application with this Court for approval or payment of such fees, costs or expenses.  Any such fees, costs and expenses incurred by professionals retained by the DIP Lenders shall be paid within ten (10) calendar days of delivery of a summary invoice to the Debtors, with a copy to the U.S. Trustee and any official committee appointed in these cases; provided, however, that if the Debtors, U.S. Trustee or any official committee objects to the reasonableness of such fees and expenses and cannot resolve the objection within five (5) business days of service of such invoice(s), the Debtors, U.S. Trustee or any official committee, as the case may be, shall file and serve upon such professional an objection with the Court (the "**Fee Objection**") limited to the issue of the reasonableness of the disputed fees and expenses; provided, further, that the Debtors shall timely pay in accordance with this Order the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has been timely filed.  All such unpaid fees, costs and

14

expenses of the DIP Lenders, including, without limitation, all fees referred to in the DIP Facility Documents (including, without limitation, all attorneys' and other professionals' fees and expenses), shall constitute DIP Obligations and shall be secured by the Collateral and afforded all priorities and protections afforded to the DIP Obligations under this Order and the DIP Facility Documents.

13.     One hundred percent of the net proceeds from any and all assets sales (other than sales of inventory in the ordinary course of the Debtors' business), insurance and condemnation proceeds (unless the Debtors promptly inform the DIP Lenders that such proceeds are to be used by the Debtors to repair or replace damaged property, and are in fact so used within sixty (60) calendar days of receipt), and other extraordinary receipts (other than tax refunds, the receipt of which is anticipated in the Approved Budget) shall be applied to repay outstanding DIP Loans.

14.     The Debtors may enter into any non-material amendments, consents, waivers or modifications to the DIP Facility Documents without the need for further notice and hearing or any order of this Court; provided, however, that (a) amendments and waivers that affect the rights, obligations or duties of the Prepetition Lenders shall also require the consent of the respective affected party; provided, further, however, that the Debtors shall provide any official committee appointed in the Chapter 11 Cases and the U.S. Trustee with notice of any material modification to the DIP Facility Documents.

15.     The DIP Lenders are hereby granted an allowed superpriority administrative expense claim (the "**Superpriority Claim**") pursuant to Bankruptcy Code section 364(c)(1), for all obligations of the Debtors under the DIP Facility Documents (collectively, the "**DIP Obligations**") having priority over any and all other administrative claims against the

Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof including, without limitation, any proceeds or property recovered in connection with the pursuit of claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any (the "**Avoidance Actions**").  The Superpriority Claim granted in this paragraph shall be senior to the Adequate Protection Priority Claim, but shall be subject to the Carve-Out.  Except as set forth herein, no other superpriority claims shall be granted or allowed in the Chapter 11 Cases.

16.     To secure the DIP Obligations, the DIP Lenders are hereby granted, immediately upon the entry of this Order, valid, enforceable, non-avoidable and fully perfected, first priority senior liens on and security interests (collectively, the "**Postpetition Liens**") in all Prepetition Collateral and all Post-Petition Collateral, other than Avoidance Actions, senior to the Adequate Protection Liens, and subject and subordinate only to the Carve-Out.

17.     The Debtors irrevocably waive and shall not assert any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Prepetition Lenders upon the Postpetition Collateral or the Prepetition Collateral.

18.     Except for the Carve-Out, no claim or lien having a priority superior to or pari passu with those granted pursuant to this Order to the Prepetition Lenders shall be granted or allowed while any portion of the Adequate Protection Obligations remain outstanding.

16

19.     The Postpetition Liens shall not at any time be (i) made subject or subordinate to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under Bankruptcy Code sections 363 or 364(d) or otherwise, other than the Carve-Out or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551.

20.     The Postpetition Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Order without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements or other agreements or instruments, such that no additional steps need be taken by the DIP Lenders to perfect such interests.  Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other parties in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other Post-Petition Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the DIP Lenders the Postpetition Liens on such fee, leasehold or other interest or other Post-Petition Collateral or the proceeds of any assignment, sale or other transfer thereof.

21.     The provisions of this Order shall be binding upon and inure to the benefit of the Prepetition Lenders, the DIP Lenders, the Debtors, and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for or on behalf of either Debtor's estate or with respect to its property).

17

22.     The provisions of this Order and any actions taken pursuant thereto (a) shall survive the entry of any order: (i) confirming any plan of reorganization in the Chapter 11 Case; (ii) converting the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; or (iii) dismissing the Chapter 11 Case; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Order shall maintain their priority as provided by this Order until all of the Adequate Protection Obligations and DIP Obligations are indefeasibly paid in full and discharged.

23.     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any Adequate Protection Obligations incurred prior to the actual receipt by the Prepetition Lenders, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby with respect to any Adequate Protection Obligations.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of Adequate Protection Obligations by the Debtors prior to the actual receipt by the Prepetition Lenders, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Order, and the Prepetition Lenders shall be entitled to all of the rights, remedies, protections and benefits granted under this Order with respect to all uses of Cash Collateral and the incurrence of Adequate Protection Obligations by the Debtor.

24.     This Order is entered pursuant to Bankruptcy Code section 364, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lenders all protections afforded by

758906.1                                                                                                                10016.001

Bankruptcy Code section 364(e).  If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtors to the DIP Lenders, prior to the date of receipt by the DIP Lenders of written notice of the effective date of such action or (ii) the validity and enforceability of any lien or priority authorized or created under this Order or pursuant to the DIP Facility Documents.  Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by the Debtors to the DIP Lenders prior to written notice to the DIP Lenders of the effective date of such action, shall be governed in all respects by the original provisions of this Order, and the DIP Lenders shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Facility Documents with respect to all such indebtedness, obligations or liability.

25.     Upon entry of this Order, the DIP Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtors which in any way relates to the Postpetition Collateral.  The Debtors are authorized and directed to take any actions necessary to have the DIP Lenders be added as an additional insured and loss payee on each insurance policy.

26.     The DIP Facility Documents and the provisions of this Order shall be binding upon the Debtors, the DIP Lenders, the Prepetition Lenders, and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the DIP Lenders, the Prepetition Lenders, and each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtors under any chapter of the Bankruptcy Code.  The

provisions of this Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest.

27.     Each of the DIP Facility Documents to which the Debtors are or will become a party shall constitute legal, valid, and binding obligations of the Debtors party thereto, enforceable in accordance with their terms.  The DIP Facility Documents have been or will be properly executed and delivered to the DIP Lenders by the Debtors no later than one business day after entry of this Order.  The rights, remedies, powers, privileges, liens, and priorities of the DIP Lenders provided for in this Order and in the DIP Facility Documents shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order), by any plan of reorganization or liquidation in the Chapter 11 Cases, by the dismissal or conversion of the Chapter 11 Cases or in any Successor Case under the Bankruptcy Code unless and until the DIP Obligations have first been indefeasibly paid in full in cash and completely satisfied and the commitments terminated in accordance with the DIP Facility Documents.

28.     *Modification of Automatic Stay.*

(a)     Except as set forth in sub-paragraph (b) of this paragraph, which sub-paragraph exclusively governs the applicability of the automatic stay to any action by DIP Lenders or the Prepetition Lenders to foreclose on their security interests in and liens on any Postpetition Collateral granted hereunder, the Court hereby orders that (x) the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby vacated as to DIP Lenders and the Prepetition Lenders to permit such parties to perform the actions described in or permitted by this Order, in each case without further notice, application or motion to, or order from the Court, and (y) neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit such party's exercise, enjoyment and

20

enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable). Consistent with the foregoing sentence, the DIP Lenders and the Prepetition Lenders are hereby granted leave to (i) receive and apply payments of the DIP Obligations, the Prepetition Obligations, and proceeds of the Postpetition Collateral, as applicable, (ii) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the Postpetition Collateral provided by this Order, (iii) charge and collect any interest fees, costs and other expenses accruing at any time under this Order, the DIP Facility Documents or Loan Documents, as applicable and to the extent authorized herein, (iv) give the Debtors any notice provided for in this Order, the DIP Facility Documents or Loan Documents, as applicable, and (v) (1) with respect to the DIP Lenders, upon the Termination Date (as defined below), but subject to the last sentence of this paragraph, and in each case without further notice, motion or application to, order of, or hearing before, this Court: (A) terminate the Term Sheet and/or the other DIP Facility Documents, (B) cease making DIP Loans and/or suspend or terminate their lending commitments to the Debtors, (C) accelerate any or all of the DIP Obligations and declare such DIP Obligations immediately due and payable in cash, and/or (D) revoke the Debtors' right, if any, to use the Postpetition Collateral and proceeds of the Postpetition Collateral on the consensual terms and conditions described in this Order and/or proceeds of the DIP Facility, and (2) with respect to the Prepetition Lenders, upon the Termination Date, but subject to the last sentence of this paragraph, terminate the consensual Postpetition Collateral and Cash Collateral use arrangement contained herein without further notice, motion or application to, order of, or hearing before, this Court. Notwithstanding anything to the contrary contained in this Order, the Debtors reserve all rights to seek authorization to use the Cash Collateral and/or Postpetition

21

Collateral of the DIP Lenders and Prepetition Lenders on a non-consensual basis on and after the Termination Date upon notice and hearing, and the DIP Lenders and Prepetition Lenders reserve all rights to object to, and contest, such authorization.

(b)      Upon the Termination Date, and after obtaining relief from this Court from the automatic stay upon hearing and five (5) business days prior notice to respective counsel to the Debtors, Committee, if any, Prepetition Lenders, and U.S. Trustee, the DIP Lenders shall be entitled to foreclose or otherwise enforce their security interests in and liens on any or all of the Postpetition Collateral and/or to exercise any other default-related remedies under the DIP Facility Documents, this Order or applicable law in seeking to recover payment of the DIP Obligations.  In addition to the Debtors' rights to seek authorization to use the Cash Collateral and/or Postpetition Collateral of the DIP Lenders and Prepetition Lenders and on a non-consensual basis on and after the Termination Date upon notice and hearing, and the reservation of all rights of the DIP Lenders and Prepetition Lenders to object to, and contest, such authorization as described above, the parties acknowledge and agree that (x) the only other issue to be determined and decided at such Court hearing is whether the Termination Date has occurred and is continuing and (y) if the DIP Lenders are granted such relief from the automatic stay, then the Prepetition Lenders will likewise be granted such relief at such time.

(c)      As used in this Order, the term "**Termination Date**" means the earliest date on which any of the following events:

(i)      the date on which a Borrowers files a motion with the Bankruptcy Court for authority to proceed with the sale or liquidation of the Borrowers (or any material portion of the assets of a Borrowers) without the consent of the DIP Lenders, and

22

(ii)    the acceleration of the loans or termination of the commitments under the DIP Facility, including, without limitation, as a result of the occurrence of an Event of Default (as defined below).

(d)    As used in this Order, the term "**Event of Default**" means:

(i)    The Borrowers shall fail to make any payment of principal, interest, fees, or other amounts under the DIP Facility when the same becomes due and payable; or

(ii)    Any representation or warranty made by the Borrowers in the Term Sheet, the Interim Order or the Final Order, any DIP Facility Document or that is contained in any certificate, document or financial or other statement furnished by it at any time under or in connection with the Term Sheet or any such other DIP Facility Documents shall prove to have been inaccurate in any material respect on or as of the date made or deemed made or furnished; or

(iii)    The Debtors shall breach or violate any term, covenant or agreement contained herein, the Interim Order or this Final Order; or

(iv)    Conversion of either of the Borrower's Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; or

(v)    The appointment of a trustee in either Borrower's Chapter 11 Case without the consent of the DIP Lenders; or

(vi)    The appointment of an examiner in either Borrower's Chapter 11 Cases with expanded powers without the consent of the DIP Lenders; or

(vii)    The Court fails to approve the Borrowers' retention of 21 West Partners, LLC as investment bankers for the Borrowers; or

23

(viii)    The Borrowers' termination of the services of 21 West Partners, LLC without the prior consent of the DIP Lenders;

(ix)    The Borrowers terminate the services of JAS Financial Services, LLC as Chief Restructuring Officer for the Borrowers without the prior consent of the DIP Lenders;

(x)    The dismissal of either Borrower's Chapter 11 Case; or

(xi)    The entry of any order modifying, reversing, revoking, staying, rescinding, vacating or amending the Interim Order or the Final Order without the consent of the DIP Lenders; or

(xii)    The Borrowers shall have proposed Sale Procedures, as defined in the Term Sheet, not approved by the Lenders; or

(xiii)    The licensor under the UCSF License, as defined in the Motion, fails to consent to the collateral assignment of the UCSF License to the DIP Lenders, or fails to consent to, or cooperate in, the Sale Procedures, including the assignment of the UCSF License pursuant thereto; or

(xiv)    The Borrowers shall attempt to vacate or modify the Interim Order or the Final Order over the objection of the DIP Lenders; or

(xv)    The Bankruptcy Court shall enter an order granting relief from the automatic stay to the holder or holders of any other security interest or lien (other than the DIP Lenders) in any Postpetition Collateral to permit the pursuit of any judicial or non-judicial transfer or other remedy against any of the Postpetition Collateral; or

24

(xvi)    Any provision of the documents relating to the Postpetition Loans shall cease to be valid and binding on the Borrowers, or the Borrowers shall so assert in any pleading filed in any court; or

(xvii)   The Debtors shall (i) bring or consent to any motion or application in the Chapter 11 Cases to obtain financing from any person other than the DIP Lenders under section 364 of the Bankruptcy Code (other than with respect to a financing used, in whole or part, to repay in full in cash all obligations due under the DIP Facility); (ii) grant any lien that is *pari passu* or senior to any lien granted to the DIP Lenders under the Interim Order or this Final Order, except as permitted therein; or (iii)  grant a superpriority claim, other than that granted in the Interim Order or this Final Order (and other than with respect to the Carve-Out or adequate protection provided to the Prepetition Lenders), which is *pari passu* with or senior to any of the claims of the DIP Lenders against the Borrowers hereunder; or

(xviii)  Any other party shall seek and obtain allowance of any order in the Chapter 11 Cases to recover from any portions of the Postpetition Collateral any costs or expenses of preserving or disposing of such Postpetition Collateral under section 506(c) of the Bankruptcy Code; or

(xix)    There shall occur a variance from the Approved Budget in excess of approved variances, unless waived by the DIP Lenders; or

(xx)     The Borrowers shall fail to provide an Operating Budget that is acceptable to DIP Lenders in accordance with the terms set forth herein, the Interim Order or the Final Order; or

(xxi)    The Borrowers shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition indebtedness, except to the extent set forth in the Approved Budget, unless approved by the DIP Lenders or as authorized by the Bankruptcy Court after notice and hearing

29.     Notwithstanding anything in this Order to the contrary, the DIP Lenders' obligation to make DIP Loans in accordance with the DIP Facility Documents shall automatically terminate without any further action by this Court or the DIP Lenders, upon the Termination Date.

30.     Upon the occurrence of a Termination Event, to the extent unencumbered funds are not available to pay in full administrative expenses, the Adequate Protection Claims, the Adequate Protection Liens and the liens securing the Prepetition Obligations and the DIP Facility, repayment to the DIP Lenders shall be subject to (i) the payment of (a) unpaid professional fees and expenses specified in the Operating Budget that have been incurred as of the date of such Termination Event by professionals retained by the Debtors, any official committee of unsecured creditors (the "**Committee**"), any other statutory committee, trustee, examiner or other representative appointed in the Chapter 11 Cases or, (b) unpaid professional fees and expenses incurred by any Chapter 7 trustee in the event of conversion of either Chapter 11 Case to Chapter 7, but subject to a ceiling thereon of $10,000.00 (collectively, the "**Professionals**") net of any unused retainers for such professional fees and expenses, (the "**Professional Fee Carve-Out**"), and (ii) the payment of fees payable pursuant to 28 U.S.C. § 1930 (together with the Professional Fee Carve-Out, the "**Carve-Out**").  Estate professional fees

26

and expenses may be paid only to the extent they are allowed, or as otherwise permitted pursuant to the compensation procedures approved by the Bankruptcy Court.

31.     No portion of the Postpetition Collateral, Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with asserting any claims or causes of action against the Prepetition Lenders, including, without limitation, any action challenging or raising any defenses to the Prepetition Obligations, or the liens of the Prepetition Agents or the Prepetition Lenders; provided, however, that no more than $10,000 of the Cash Collateral may be used by the Committee, if any, to investigate the prepetition liens and claims of the Prepetition Lenders.

32.     The stipulations and admissions contained in this Order, including, without limitation, in Paragraphs D and E (including all subparagraphs thereof) of this Order, shall be binding on all parties in interest, including, without limitation, any Committee, unless, and solely to the extent that, (a) such Committee, or another party in interest with standing and requisite authority, has timely filed an adversary proceeding (subject to the limitations set forth in this paragraph) challenging the amount, validity, or enforceability of the Prepetition Obligations, or the perfection or priority of the Prepetition Lenders' liens on and security interests in the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action on behalf of the Debtors' estate against the Prepetition Lenders relating to the Prepetition Obligations, no later than the earlier of sixty (60) days from the Petition Date and thirty (30) days after the date of appointment of the Committee, and (b) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding.  If no such adversary proceeding is timely commenced as of such date then, without further order of the Court, (i) the

27

claims, liens and security interests of the Prepetition Lenders shall, without further order of the Court, be deemed to be finally allowed for all purposes in this Chapter 11 Cases and any subsequent chapter 7 cases and shall not be subject to challenge by any party in interest as to validity, priority or otherwise, and (ii) the Debtors and their estates shall be deemed to have released any and all claims or causes of action against the Prepetition Lenders relating to the Loan Documents, the Prepetition Obligations or any related transactions.  Notwithstanding anything to the contrary herein, if any such adversary proceeding is timely commenced, the stipulations contained in Paragraphs D and E (including all subparagraphs thereof) of this Order, shall nonetheless remain binding on all parties in interest and preclusive (as provided in the second sentence of this paragraph) except to the extent that such stipulations are expressly challenged in such adversary proceeding.

33.     This Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lenders may have to bring or be heard on any matter brought before this Court.

34.     The failure of the DIP Lenders to seek relief or otherwise exercise their rights and remedies under this Order, the DIP Facility Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights thereunder, or otherwise of the DIP Lenders.

35.     Nothing in this Order or in any of the DIP Facility Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lenders of any liability for any claims arising from any and all activities by the Debtors in the operation of their business or in connection with their restructuring efforts.

36.     To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Facility Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Facility Documents, the terms and provisions of this Order shall govern.

37.     Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

38.     The DIP Lenders are hereby relieved of the requirement to file proofs of claim in these Chapter 11 Cases with respect to any DIP Facility Obligations and any other claims or liens granted hereunder or created hereby.

39.     This Court shall retain jurisdiction overall all matters pertaining to the implementation, interpretation and enforcement of this Order and/or the DIP Facility Documents.

40.     The terms of this Order shall be binding on any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

Dated:  August _10_, 2010                United States Bankruptcy Court:


                                        _____
                                        Honorable Sidney B. Brooks
                                        United States Bankruptcy Judge

758906.1                                                            10016.001

# EXHIBIT A

## APPROVED BUDGET

Ceragenix Pharmaceuticals, Inc.
Ceragenix Corporation
DIP Budget
June 2010 - Oct 2010

| | June | July | August | September | October | 5 Month Total |
|---|---|---|---|---|---|---|
| Beginning cash balance | 21,206 | 5,430 | 72,090 | 72,269 | 185,801 | 21,206 |
| | | | | | | |
| Cash receipts | | | | | | |
| Operations | - | - | 175,000 | - | - | 175,000 |
| Sale of assets | | | | | | |
| Total cash receipts | - | - | 175,000 | - | - | 175,000 |
| | | | | | | |
| Cash disbursements | | | | | | |
| Operations-Manufacturing | - | - | - | - | - | - |
| Operations-G&A | 5,776 | 182,751 | 73,821 | 24,353 | 81,042 | 367,743 |
| License, royalties and R&D | - | 78,856 | - | 6,115 | - | 84,971 |
| Bankruptcy and legal | 10,000 | 171,733 | 101,000 | 106,000 | 60,000 | 448,733 |
| Total cash disbursements | 15,776 | 433,340 | 174,821 | 136,468 | 141,042 | 901,447 |
| | | | | | | |
| Net Cash Flows | (15,776) | (433,340) | 179 | (136,468) | (141,042) | (726,447) |
| | | | | | | |
| DIP Financing Draws | | 500,000 | | 250,000 | | 750,000 |
| | | | | | | |
| Ending Cash Balance | 5,430 | 72,090 | 72,269 | 185,801 | 44,759 | 44,759 |

Ceragenix Corporation
Cash Receipts
June 2010 - October 2010

| | June | July | August | September | October | 5 Month Total |
|---|---|---|---|---|---|---|
| **Promius Open Invoices:** | | | | | | |
| Promius 1049 | | | | | | - |
| Promius 1052 | | | | | | - |
| Promius 1054 | | | | | | - |
| Promius 1055 | | | | | | - |
| Promius 1056 | | | | | | - |
| Promius 1057 | | | | | | - |
| | | | | | | |
| **Promius Open POs** | | | | | | |
| 1280 (8000 90g tubes, $6.41 tube, $5.31 prepaid) | | | | | | - |
| | | | | | | |
| Estimated Promius Q1 Royalty (less interest) | | | | | | - |
| Estimated Promius Q2 Royalty (less interest) | | | | | | - |
| | | | | | | |
| **Total Cash Receipts** | - | - | 175,000 | - | - | 175,000 |

Estimate based on A/R and royalties due from Dr. Reddy's, net of deposits and direct payments made by Dr. Reddy's.

Ceragenix Corporation
DIP Budget
June 2010 - Oct 2010

| Operations | June | July | August | September | October | 5 Month Total |
|---|---|---|---|---|---|---|
| Manufacturing Costs: | | | | | | |
| Customs/duties payment for PC 104 ordered by Promius | | 5,000 | | | | 5,000 |
| Total Manufacturing Disbursements | - | - | - | - | - | - |

Note:

Assumes all production cost for product shipped during the period are paid for by Promius or international licensees.

Ceragenix Corporation
DIP Budget
June 2010 – October 2010

| General and Administrative | June | July | August | September | October | 5 Month Total |
|---|---|---|---|---|---|---|
| **Payroll:** | | | | | | |
| Porter (a) | | 31,666 | 15,833 | | 31,666 | 79,165 |
| Sperber (a) | | 31,666 | 15,833 | | 31,666 | 79,165 |
| Allen (a) | | 24,000 | 12,000 | | | 36,000 |
| Yeoman (a) | | 20,000 | | | | 20,000 |
| Gerhard | | 12,000 | 6,000 | 6,000 | | 24,000 |
| Total payroll | | 119,332 | 49,666 | 6,000 | 63,332 | 238,330 |
| Payroll taxes | 344 | 9,669 | 3,775 | 456 | 4,813 | 18,713 |
| Health and dental insurance | | 15,854 | 4,288 | 1,268 | 1,268 | 23,022 |
| 401k administrative fees | | 2,014 | | | | 2,014 |
| Employee parking | | 570 | 380 | | | 950 |
| Rent/Backoffice Agnt | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| D & O Insurance (b) | | | | | | 0 |
| General/Product Liability Insurance (c) | | 28,500 | | | | 28,500 |
| Telecom/Webex | | 500 | 500 | 500 | 500 | 2,000 |
| License/taxes/fees | | | 4,000 | | | 4,000 |
| Tax preparation fees | | | | 5,000 | | 5,000 |
| Office supplies | | 50 | 50 | 50 | 50 | 200 |
| IT Support | | 300 | 300 | 300 | 300 | 1,200 |
| BOD fees (2 telephonic meetings) | | | | | | 0 |
| Scientific advisory board | | | | | | 0 |
| EDGAR filings | | | | | | 0 |
| Postage/UPS | | 500 | 500 | 500 | 500 | 2,000 |
| Bank charges | 179 | 179 | 179 | 179 | 179 | 895 |
| Payroll processing fees | 153 | 183 | 183 | 100 | 100 | 719 |
| Website | | | | | | 0 |
| Dataroom | | | | | | 0 |
| Data storage | | | | | | 0 |
| Transfer agent | | | | | | 0 |
| Other/Misc | 100 | 100 | 5,000 | 5,000 | 5,000 | 15,200 |
| Total general and administrative | 5,776 | 182,751 | 73,821 | 24,353 | 81,042 | 367,743 |

Ceragenix Corporation
DIP Budget
June 2010 - Oct 2010

| | June | July | August | September | October | 5 Month Total |
|---|---|---|---|---|---|---|
| **Licensing/Royalties** | | | | | | |
| | | | | | | |
| BYU: | | | | | | |
| Minimum Annual Royalty (2009 and 2010 payments) | | - | | - | - | - |
| Quarterly Research Support | | - | - | - | - | - |
| | | | | | | |
| University of California | | | | | | |
| Minimum Annual Royalty | | 50,000 | | | | 50,000 |
| Quarterly Royalty Payments (e) | | 28,856 | | 6,115 | | 34,971 |
| Total Licensing/Royalties | - | 78,856 | - | 6,115 | - | 84,971 |
| | | | | | | |
| Research & Development | | | | | | |
| Consulting Fee to Dr. Savage | - | - | - | - | | - |
| Misc testing | - | - | - | - | | - |
| Total R&D | - | - | - | - | | - |
| | | | | | | |
| Total Licensing/Royalties/R&D | - | 78,856 | - | 6,115 | | 84,971 |

Ceragenix Corporation
DIP Budget
June 2010 - Oct 2010

| | June | July | August | September | October | 5 Month Total |
|---|---|---|---|---|---|---|
| **Bankruptcy Related:** | | | | | | |
| Beiging Shapiro Burrus | 10,000 | 50,000 | 25,000 | 25,000 | 25,000 | 135,000 |
| Olshan/Fuller | | 40,000 | 25,000 | 25,000 | 10,000 | 100,000 |
| Chief Restructuring Officer | - | 50,000 | 30,000 | 30,000 | 25,000 | 135,000 |
| Investment Banker | | 20,000 | 20,000 | 20,000 | | 60,000 |
| Trustee Fees | | 350 | | 5,000 | | 5,350 |
| | | | | | | |
| **Non-Bankruptcy Related:** | | | | | | |
| Reimbursement of UC Legal Fees | | 10,383 | | | | 10,383 |
| IP Counsel | | 1,000 | 1,000 | 1,000 | | 3,000 |
| **Total Professional Fees** | 10,000 | 171,733 | 101,000 | 106,000 | 60,000 | 448,733 |

Any additional management incentive plan subject to potential transaction fee based on redemption of at least 90% of Senior Creditor Claims

G & A Assumptions

(a) Messrs Porter & Sperber have made voluntary reductions in base salary to reduce the costs to the company
   Assumes Yeoman is terminated effective 7/30. Allen's payroll reduced by 20% for June/July accrual payment and for August.
   Assumes post petition payroll caught up in July.
   Provides Porter and Sperber with "Retention Bonus" equal to two months salary upon completion of bankruptcy or October 31

(b) Assumes D&O is cancelled.

(c) General and product liability insurance renews effective July 1. Payment required by 7/31 or policy will be cancelled.
   Policy extended through October 31st.

License & Royalties

(e) Estimated UCSF Royalty

| | | |
|---|---:|---|
| Q4 09 Past due royalty | 28,856 | |
| | | |
| Q1 Barrier Repair revenues | 385,094 | |
| Royalty rate | 5% | |
| Royalty | 19,254.70 | |
| Less minimum royalty prepayment | (50,000.00) | |
| | (30,745.30) | No royalty due for Q1 |
| | | |
| Q2 Barrier Repair revenues | 381,930 | invoices 1054, 1055, 1056 + royalty |
| Royalty rate | 5% | |
| Royalty | 19,096.50 | |
| Less royalty prepayment balance | (30,745.30) | |
| | (11,648.80) | No royalty due for Q2 |
| | | |
| Q3 Barrier Repair revenues | 355,280 | invoices 1057, 8,000 90g tubes and royalty |
| Royalty rate | 5% | |
| Royalty | 17,764.00 | |
| Less royalty prepayment balance | (11,648.80) | |
| | 6,115.20 | Q3 Royalty |

, 2010.